UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FRANKIE O. HERNANDEZ HERNANDEZ,**

    **Plaintiff,**

v.                                                                            Case No: 6:20-cv-461-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM AND DECISION

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits. In a decision dated May 31, 2019, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from July 13, 2015, through the date of the decision. R. 21. On July 15, 2021, the Court directed the Commissioner to show cause why the case should not be remanded as it appeared that such relief was warranted. Doc. 24.

Having considered the parties' joint memorandum, the Commissioner's response to the Order to Show Cause, and the record (Docs. 19, 23, 24), the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **REVERSED AND REMANDED**.

**I.**    **Issues on Appeal**

Claimant makes two arguments on appeal: (1) the ALJ failed to provide "good cause" for discounting the medical source statements of treating physicians; and (2) the ALJ failed to include the Plaintiff's illiteracy and inability to communicate in English in hypothetical questions to the vocational expert. Doc. 23.

## II.   Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo*."  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.   Discussion

The Court will solely address Claimant's second challenge to the ALJ's decision because it is dispositive of the appeal.  In relevant part, the ALJ found that Claimant is "illiterate and is unable to communicate in English."  R. 20, citing 20 CFR § 404.1565.  In her decision, the ALJ also stated that the VE testified that an individual with Claimant's age, education, work experience, and residual functional capacity would be able to perform the requirements of representative occupations such as document preparer, call out operator, and charge account clerk.  R. 20-21.  The ALJ found that the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles.  R 21.

Claimant argues that the ALJ's hypothetical questions to the VE did not include any information or limitations regarding his illiteracy or ability to communicate in English despite subsequently finding that limitations exist.  *Id*.  While there was a Spanish interpreter at the hearing, Claimant contends that there is no indication that the VE was aware of his inability to communicate in English and illiteracy.  *Id*.  Specifically, Claimant states that the ALJ determined that he could perform such jobs as a document preparer, call-out operator, and charge account

clerk based on the VE's testimony. *Id*. Claimant asserts that the document preparer job requires an L2 language level and the charge account clerk and call-out operator jobs require an L3 language level. *Id*. at 27. Claimant offers that an L2 language level requires a passive English vocabulary of 5,000 to 6,000 words and an ability to read English at a rate of 190 to 215 words per minute, write compound and complex sentences in English, and speak clearly and distinctly in English. *Id*. Claimant states that an L3 language level requires an ability to: (1) read a variety of novels, magazines and encyclopedias in English; write reports and essays in English with proper format, punctuation, spelling and grammar; and speak English before an audience with poise, voice control, using correct English and a well-modulated voice. *Id*. Claimant states that he is unable to perform at either the L2 or L3 language levels as he is illiterate and is unable to communicate in English. *Id*.

Claimant essentially makes the argument that the ALJ erred by failing to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT) as he contends that the VE's testimony that Claimant, despite his inability to communicate in English and read and write, could perform the work of a document preparer, call out operator, and charge account clerk is inconsistent with the DOT's language level requirements for these jobs.

Pursuant to *Washington v. Comm'r of Soc. Sec.*, the Eleventh Circuit held that "SSR 00-4p, 2000 SSR LEXIS 8 is properly understood to impose an affirmative duty on the ALJs to identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision." 906 F.3d 1353 (11th Cir. 2018). A conflict is apparent if it should be apparent to an ALJ who has ready access to and a close familiarity with the DOT. *Id*.

With respect to the English language issue, contrary to Claimant's description of the Language Level 2 as requiring certain passive "English" vocabulary and an ability to read, write,

and speak "English," the word "English" does not appear in the DOT's Appendix C that Claimant cites.  *See* DOT No. 249.587-018.  Indeed, "[t]he Eleventh Circuit has found that a language level of 2 is not inconsistent with a claimant's inability to speak English."  *Perez v. Berryhill*, 2019 WL 643727, at *5 (M.D. Fla. Feb. 15, 2020) (citing *Rivera-Cruzado v. Comm'r of Soc. Sec.*, 741 Fed. App'x. 737 (11th Cir. 2018) (finding that the VE's testimony that the claimant could perform his past relevant work as a chauffeur without being able to speak English did not conflict with the DOT because the listing did not specifically require the claimant's language to be English); *see also Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) (finding that the claimant who was not fluent in English failed to carry the burden that he was unable to work as a telephone-directory distributor because the DOT "does not specify that the applicant must be able to perform the telephone-directory distributor job in English.").

Even if the other two occupations under Language Level 3 refer to the word "English,"[1] the document preparer occupation does not require the ability to communicate in that language. With 31,000 jobs in the national economy for that occupation, a number that Claimant does not challenge or describe as insignificant, the VE's testimony provides substantial evidence to support the ALJ's step-five determination.  *See Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 934-35 (11th Cir. 2015) (finding that 23,800 jobs nationally is significant); *see also Bohn v. Astrue*, 2013 WL 494059, at *6 (M.D. Fla. Feb. 7, 2013) ("[E]ven if there had been an error with respect to [certain jobs], that error would be harmless since [one] job alone supports the law judge's finding that there are jobs in significant numbers in the national economy that the plaintiff can perform.").

---

[1] Note that every job identified by the VE in *Washington* was in apparent conflict whereas here the document preparer occupation does not conflict with Claimant's inability to communicate in English.

Moreover, the VE was present at the hearing where Claimant testified through an interpreter that he can speak, understand, and write a "little bit" of English.  R. 36-38.  The ALJ presented to the VE a hypothetical person of Claimant's same age, education, and work experience.  R. 56.  Since the ability to communicate in English is an "education" factor, by directing the VE to assume a person of Claimant's education, the ALJ adequately advised the VE to consider job opportunities for an individual with limited proficiency in English.  *Davila*, 2014 U.S. Dist. LEXIS 16742, at *32 (finding that consideration of the claimant's English proficiency was included in the hypothetical question to the VE when the ALJ instructed the VE to assume a person with the claimant's education).  As such, at least with respect to the document preparer job and Claimant's inability to communicate in English, the Court agrees with the Commissioner that the VE's testimony is not inconsistent with the DOT's language requirements.

However, the Court finds that remand is appropriate based on the literacy issue.  In addition to the "English" finding, Claimant contends that he is unable to perform at the L2 or L3 language levels because the ALJ agreed that he is illiterate.  An inability to communicate in English is a distinguishable concept from illiteracy.  *Davila v. Colvin*, 2014 WL 495525, at *12 (M.D. Fla. Feb. 5, 2014).  "Illiteracy means the ability to read and write."  20 C.F.R. § 404.1564(b)(1).  A person is illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name" and generally has little or no formal schooling.  *Id*.

The jobs that the VE identified and the ALJ discusses in the decision do not require "English," but each require the ability to read and write.  *See* DOT Nos. 249.587-018, 237.367-014, 205.367-014.  Given the apparent discrepancy, the Court directed the Commissioner to show cause why Claimant is not entitled to a remand on this issue.  Doc. 25.  The Commissioner

responded that "[w]hen the ALJ found that Claimant is illiterate (Tr. 20), she meant he is illiterate in English.  She could not possibly have meant he is illiterate in all languages because the record reflects, and the ALJ knew, that Claimant is literate in Spanish."  Doc. 25 at 1.  In support of this contention, the Commissioner explains that Claimant testified that he attended two years of college in Puerto Rico, spends his time reading books "presumably in Spanish," and worked a job in Puerto Rico that required the ability to read and write.  *Id*. at 2. The Commissioner states that the VE heard Claimant's testimony.  *Id*. at 2-3.

The Commissioner argues that the "language level of 2 is not inconsistent with Claimant's inability to read and write in English (illiteracy) because the document preparer occupation does not require the ability to read and write in English but only the ability to read and write in some language."  *Id*. at 3, citing DOT 249.587-018.  The Commissioner concludes that Claimant is illiterate in English but not in Spanish and the question to the VE included the illiteracy because the hypothetical individual had the same education as Claimant.  *Id*.  In short, the Commissioner asserts that since the record shows that Claimant can read and write in Spanish, he is able to perform the requirements of the document preparer position.  *Id*.[2]

The Court declines to make the same assumptions the Commissioner makes, especially in light of the ALJ's duties under *Washington*.  It may be that the Claimant testified as the Commissioner describes and the VE heard that testimony, but the ALJ specifically found that Claimant is illiterate *and* is unable to communicate in English.  R. 20.  Again, literacy is distinguishable from the ability to communicate in English.  The ALJ may have meant that

---

[2] In the response, the Commissioner recognizes the distinction and will, moving forward, "assign an individual to the illiteracy category only if the individual is unable to read or write a simple message *in any language*."  Doc. 25 at 2, n 2, citing SSR 20-01p, 85 Fed. Reg. 13.692-02. 13.694 (effective April 27, 2020) (emphasis added to the original).

Claimant is illiterate only in English, but the Court will not presume that is the case. In fact, if the Court adopted the Commissioner's reasoning and the ALJ meant Claimant is illiterate only in English, it seems that the ALJ's illiteracy determination is superfluous and redundant given the additional finding that he cannot communicate in English.[3]

The ALJ made the specific finding that the VE's testimony is consistent with the information contained in the DOT. R. 21. If Claimant is illiterate as the ALJ stated and without the ability to read and write in general, then the VE's testimony does not account for the difference between the DOT and the ALJ's determination that Claimant can perform the work despite his illiteracy. The Court cannot tell from the decision.

Because the undersigned is not capable of a meaningful review of the ALJ's decision, the matter is due to be remanded for further proceedings. *See Lopez v. Berryhill*, 2019 WL 968399, at *4 (M.D. Fla. Feb. 28, 2019) (finding that remand was substantiated because neither the ALJ nor the VE fully addressed the plaintiff's language barrier on his ability to find and perform the occupations the ALJ determined he could perform which required a sufficient ability to read, write, and speak in English.).

Since this issue is dispositive, the Court finds that there is no need to address Claimant's remaining arguments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors.).

---

[3] The ALJ generally cited to 20 CFR 404.1564 and did state which subsections of that regulation she relied upon in her conclusion. *See* R. 20.

## IV. Conclusion

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED**;

2. The Clerk is directed to enter judgment for Claimant and close the case.

**DONE AND ORDERED** in Orlando, Florida on August 16, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

Counsel of Record
Unrepresented Parties